IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jason Masters, ) | C/A No.: 1:25-8139-RMG-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND |
| ) | RECOMMENDATION |
| Major Anderson, Capt. Wells, Lt. ) | |
| Berry, Sgt. Hutchins, Ofc. Gray, ) | |
| Ofc. Fuller, Ofc. Jefferies, Officer ) | |
| Norris, Ofc. Gee, Secretary Donna, ) | |
| and Marie Gibbie, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Jason Masters ("Plaintiff") sues Cherokee County Detention Center employees: Major Anderson, Capt. Wells ("Wells"), Lt. Berry ("Berry"), Sgt. Hutchins, Ofc. Gray ("Gray"), Ofc. Fuller, Ofc. Jefferies, Officer Norris, Ofc. Gee, Secretary Donna ("Donna"), and Marie Gibbie (collectively "Defendants"). Plaintiff states claims for violation of his rights regarding their handling of his mail and legal documents and their allegedly retaliatory conduct. Plaintiff seeks declaratory and injunctive relief and monetary damages. [ECF No. 9 at 13].

This matter is before the court on Defendants' motion to dismiss. [ECF No. 22]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the dismissal procedures and the possible consequences if he failed to respond adequately to the motion. [ECF No. 26].

1

The motion is fully briefed [ECF No. 34] and ripe for disposition.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(f) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant in part and deny in part Defendants' motion.

I.   Factual and Procedural Background

Plaintiff originally filed this suit on July 22, 2025, asserting allegations of interference with his mail and legal materials. [ECF No. 1]. On July 24, 2025, the court issued an order and notice, informing Plaintiff in part that allegations of interference with legal materials or mishandling of mail are analyzed as claims to lack of access to court. Prisoners have a constitutionally-protected right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). The court noted, in part, that Plaintiff had failed to allege any actual injury related to the mishandling of his mail and legal materials or confiscation of his legal materials. [*See* ECF No. 7 at 5].

On August 18, 2025, Plaintiff filed an amended complaint asserting allegations of interference with his mail and legal materials. [ECF No. 9]. More specifically, Plaintiff asserts a violation of his First Amendment rights to free speech and access to courts and his Fourteenth Amendment Due Process rights to be free of harassment. *See id.* In support of his First Amendment claims, Plaintiff alleges Defendants engaged in the following unconstitutional behavior on different dates while he was a pre-trial detainee:

> Seizing a partial of my 1983 uncompleted documents . . . .
>
> Opening six different clearly marked legal incoming documents outside my presence . . . .
>
> Ordered [officers] to place me in a body image scanner and then to place me in lockup . . . so that a contraband search could be performed [outside my presence, seizing] several of my criminal and civil documents that were clearly marked and addressed to me from attorneys and from the courts. The documents that were left behind were also marked legal mail had been taken out of the envelopes and had been rummaged through, stepped on leaving dirty boot prints on them and also went to the extent to open my liquid shampoo and pour the bottle all over my legal documents and then to totally disrespect me by mixing my civil and legal criminal documents in with my cellmates criminal mail . . . .

*Id.* at 7–8.

In support of his Fourteenth Amendment claim, Plaintiff alleges Gray repeatedly verbally harassed him with threats, although he was cordial to other inmates, and locked him up for no reason. *Id.* at 9. Plaintiff also alleges that Gray was disciplined for his actions taken against Plaintiff and that numerous other inmates and officers have witnessed the harassment, with one

3

officer telling Gray to leave Plaintiff alone. *Id.* at 10. Plaintiff alleges Berry assisted Gray and verbally harassed Plaintiff, as well. *Id.* at 11.

II. Discussion

    A. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 244. Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se

4

complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

    B.    Analysis

        1.    Eleventh Amendment Immunity

A civil action brought pursuant to 42 U.S.C. § 1983 provides a means to vindicate violations of rights, privileges, or immunities secured by the Constitution and laws of the United States, but the statute is not, itself, a source of substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "Section 1983 imposes liability on any person who, under the color of state law, deprives another person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Doe v. Kidd*, 501 F.3d 348, 355 (4th Cir. 2007) (citing 42 U.S.C. § 1983). "Under 42 U.S.C. § 1983, a plaintiff must establish three elements to state a cause of action: (1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997).

The Eleventh Amendment provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The United States Supreme Court has long held the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001).

A plaintiff "is not entitled to monetary damages under § 1983 against Defendants in their official capacities." *Moneyhan v. Keller*, 563 F. App'x 256, 258 (4th Cir. 2014) (citing *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (holding that Eleventh Amendment bars suits against non-consenting state, its agencies, and its officers acting in their official capacities)). However, suits for damages against state officials sued in their individual capacity are not barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983.") (citation omitted).

To the extent Plaintiff seeks to sue Defendants in their official capacities and for monetary damages, they are not subject to suit under § 1983, and the

6

undersigned recommends the district judge grant Defendants' motion to dismiss as to this issue.[1]

### 2. First Amendment—Access to Courts Claim

Allegations of interference with legal materials or mishandling of mail are analyzed as claims of lack of access to the court. To state a constitutional claim for denial of meaningful access to the courts, an inmate must allege specific injury resulting from the alleged denial. *See Lewis*, 518 U.S. at 349 (holding an inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure in effect at the place of incarceration in that his non-frivolous legal claim had been frustrated or was being impeded); *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir. 1993)

---

[1] Defendants also argue that they are protected by Eleventh Amendment immunity, even though Plaintiff sues them in their individual capacity, and that they are not a "person" for purposes of 42 U.S.C. § 1983. [ECF No. 22-1 at 7–9 (citing *Lizzi v. Alexander*, 255 F.3d 128, 136 (4th Cir. 2001))]. However, both arguments rest on the court determining that Plaintiff has sued Defendants in their official capacities, notwithstanding that Plaintiff states otherwise in his complaint. Defendants have not cited, nor is the court aware, of case law dismissing a plaintiff's claim brought pursuant to 42 U.S.C. § 1983 against an officer sued in his individual capacity on these grounds. *See, e.g., York v. Bostic*, C/A No. 1:20-2172-RMG-SVH, 2020 WL 7647452, at *4 (D.S.C. Dec. 2, 2020) ("The Fourth Circuit has rejected Defendants' argument, holding *Lizzi* and *Martin* inapplicable to a suit, like the instant one, brought pursuant to § 1983 . . . . .") (citing *Adams v. Ferguson*, 884 F.3d 219, 225–26 (4th Cir. 2018)), report and recommendation adopted, C/A No. 1:20-2172-RMG, 2020 WL 7488312 (D.S.C. Dec. 21, 2020); *Mackins v. Kirk*, C/A No. 0:24-3619-CMC-SVH, 2025 WL 463733, at *3 n.2 (D.S.C. Jan. 16, 2025) (same)), report and recommendation adopted, C/A No. 0:24-3619-CMC-SVH, 2025 WL 460838 (D.S.C. Feb. 11, 2025).

(holding that a prisoner had a "basic requirement that he show specific harm or prejudice from the allegedly denied access"). "[T]he inmate . . . must . . . demonstrate that his efforts to pursue a legal claim were somehow thwarted by the alleged denial of access to the courts." *Id.* at 351 (internal quotation omitted). The inmate must make specific allegations as to the actual injury sustained. *O'Dell*, 112 F.3d at 776 (finding inmate must show an "unconstitutional burden on his right of access to the courts" resulting in "actual injury" to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts") (quoting *Lewis*, 518 U.S. at 355).

Although Plaintiff alleges his legal mail and court documents were mishandled, these allegations are insufficient to demonstrate that he was prejudiced or impeded in his pursuit of a specific non-frivolous legal action. Plaintiff has provided no evidence, or even argument, concerning the impact the confiscated documents may have had on his cases. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (holding dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury); *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) ("To state a claim such as this, a prisoner must provide some basis for his allegation that the delay or failure in delivering his legal mail deprived him of meaningful access to the courts.").

Accordingly, the undersigned recommends the district judge grant Defendants' motion to dismiss as to Plaintiff's First Amendment Access to courts claim.[2]

### 3.   First Amendment—Free Speech Claim

Plaintiff also alleges that on January 13, 2025, Wells and Donna violated Plaintiff's First Amendment rights

> by opening six different clearly marked legal incoming documents outside my presence that also violated CCDC mail policy. I took

---

[2] To the extent Plaintiff also asserts a claim against Defendants for his property being damaged or destroyed [ECF No. 9 at 8, *but see* ECF No. 34 at 1], the undersigned also recommends this claim be dismissed. This court has consistently held that claims relating to an inmate's property that is lost or destroyed by a state employee does not give rise to a claim under 42 U.S.C. § 1983:

> Deprivations of property by state employees are not actionable under § 1983 and do not offend due process when adequate post-deprivation state remedies are available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Plaintiff has remedies under South Carolina law to obtain relief for the alleged taking of his personal property, by proceeding pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10 et seq. *See Mora v. City of Gaithersburg*, 519 F.3d 216, 231 (4th Cir. 2008) (State courts are available for property claims and the State process is constitutionally adequate). Plaintiff fails to state a claim for violation of his constitutional rights based on the alleged deprivation of his property.

*Gray v. Myers*, C/A No. 4:25-1288-JD-TER, 2025 WL 1864888, at *2 (D.S.C. Mar. 20, 2025), report and recommendation adopted, C/A No. 4:25-01288-JD-TER, 2025 WL 1682843 (D.S.C. June 16, 2025); *Jones v. S.C.D.C. Admin. Staff Members*, C/A No. 9:24-05272-MGL-MHC, 2025 WL 1033872, at *4 (D.S.C. Jan. 31, 2025) ("Even if Plaintiff is attempting to allege a claim of intentional deprivation of property, such action by a prison official does not state a constitutional due process claim, provided that the prisoner has access to an adequate post-deprivation remedy."), report and recommendation adopted, C/A No. 9:24-5272-MGL, 2025 WL 1029860 (D.S.C. Apr. 7, 2025).

> Well[s] beyond reasonable measures to protect these confidential materials from being opened after the first occurrence by speaking with Captain Wells in person and filing grievances about the violations with no corrective action.

[ECF No. 9 at 7–8].

"The First Amendment, as incorporated through the Fourteenth Amendment, prohibits States from 'abridging the freedom of speech.'" *Haze v. Harrison*, 961 F.3d 654, 658 (4th Cir. 2020) (quoting U.S. Const. amend. I). This proscription extends to restrictions that directly burden speech, as well as government actions that have indirect chilling effects. *Id.* The Fourth Circuit has recognized that opening an inmate's legal mail outside her presence "can chill protected speech." *Id.* However, isolated incidents of legal mail being opened outside an inmate's presence do not rise to the level of a constitutional violation. *See Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983) (holding that "a few isolated instances of plaintiff's mail being opened outside of his presence" in violation of a jail policy "were not of constitutional magnitude").

Additionally, Plaintiff has stated in his response:

> In response to Defendants stating that the amended complaint that I filed fails to state a claim upon which relief can be granted due to it being for the interference with my mail and my legal materials and also that my property was damaged and stolen by these tyrants is not what this suit is even about . . . .

[ECF No. 34 at 3].

Here, Plaintiff appears to allege a few isolated incidents of his mail being opened outside his presence and appears to clarify that he does not seek to

pursue this claim. Accordingly, the undersigned recommends the district judge grant Defendants' motion to dismiss as to Plaintiff's First Amendment Free Speech claim.

### 4. Fourteenth Amendment Claim

In support of his Fourteenth Amendment claim, Plaintiff alleges Grey and Barry repeatedly verbally harassed him, with Grey also placing Plaintiff in lockdown "on several occasions for no reason other than me being Jason Masters." [ECF No. 9 at 9]. Plaintiff additionally alleges as follows:

> Every shift that Ofc. Gray worked delta unit during those 100 days he would severely harass and taunt me with threats verbally and do so in discrimination towards me as he was cordial towards all most the other pretrial detainees. Ofc. Gray would at times come into delta unit and seek me out and advise me quote "I'm going to lock your ass up today Masters." He would also use the phrase "bring it on Masters I love lawsuits." I began filing grievances against him and it only got worse. I also reported his actions . . . . He would bang on my cell window when I was behind the locked door. He shoved my outgoing mail back through my cell door once when he was suppose to retrieve it and mail it out for me. I again would report him and it would get worse. It got so extreme that Lt. Cobb did a report to have my cell assignment changed so that I wouldn't be in a cell near his officer station. When these incidents occur[ed] other detainees would intervene and ask him to leave me alone. I went to the extent of writing my court appointed criminal defense attorney begging to be transferred to another facility and my mother call[ed] the detention center. When he worked in delta unit I had got scared to come out of my cell due to not knowing what to expect. I began speaking with CCDS mental health provider about the situation and currently seeking mental health counseling due to the injuries that officer Gray caused me psychologically due to his hostile actions. Capt. Wells advised me in her response to the last grievance that I filed against him that she had disciplined him and that was on April 23, 2025. [Many people] witnessed Ofc. Gray go to the extremes to harass me where

11

> on one occasion Officer St. Just told Gray to leave me alone as she had to call Lt. Billings to the unit for backup after Gray cursed her for helping me . . . . Berry did back officer Gray up and fail to protect me from future harassment incidents from Gray. Lt. Berry also verbally harassed me through the intercom speaker that was located on the wall of the cells that I was housed in . . . on several different occasions. This would be initiated by her without me provoking her. When would say things to provoke me and when I would respond to her rude comments that I need to shut my damn mouth are I would go to CMAX. These several incidents were witnessed . . . . when Gray locked me down for no reason. Lt. Berry wasn't quite as bad as Gray and she never harassed me verbally in person as Gray did.

[ECF No. 9 at 10–11].

Plaintiff also argues in his response that he has stated a claim as follows:

> This suit was filed by me because of a continuing pattern of extreme harassment and the psychological and mental abuse that the defendants made me endure with motivation and ill will and intent in retaliation for protected constitutional conduct, of my free speech and my right to petition the government for redress of grievances.

[ECF No. 34 at 2 (minor spelling correction made)].

Liberally construing Plaintiff's complaint, the court interprets Plaintiff's allegations as a claim for retaliation under the First Amendment. To establish a claim of retaliation under 42 U.S.C. § 1983, a plaintiff must show "either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). The Fourth Circuit has further noted that inmate retaliation claims are regarded with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it

responds directly to prisoner misconduct." *Id.* at 74. Additionally, to the extent that Plaintiff alleges verbal abuse or harassment alone, his claim fails. *See Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983.").

Here, the undersigned recommends the district judge grant Defendants' motion to dismiss as to Berry, where Plaintiff alleges verbal abuse and harassment alone as to her, but deny Defendants' motion to dismiss as to Gray, where Plaintiff alleges abuse and harassment coupled with being placed in retaliatory locked down following his complaints about Gray. *See e.g. Martin v. Duffy*, 858 F. 3d 239, 249-50 (4th Cir. 2017) (holding that inmate had sufficiently alleged retaliation when he was placed in segregation after filing a grievance, which constituted protected First Amendment activity).[3]

### III.   Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the district judge grant Defendants' motion to dismiss in part, allowing Plaintiff's First Amendment retaliation claim against Gray to proceed. [ECF No. 22].

---

[3] Plaintiff also indicates in briefing that the shakedown of his cell was also retaliatory behavior. [*See* ECF No. 34 at 1].

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

December 9, 2025  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).